**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **Chambers of** | **101 West Lombard Street** |
| **Douglas R. Miller** | **Baltimore, Maryland 21201** |
| **United States Magistrate Judge** | **MDD_DRMChambers@mdd.uscourts.gov** |
| | **(410) 962-7770** |

March 27, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:     *Caroline R. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
         Civil No. 24-3506-DRM

Dear Counsel:

On December 4, 2024, Plaintiff Caroline R. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case and the parties' briefs. ECF Nos. 8, 11, 12, 13. I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the Commissioner's decision. This letter explains why.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income Benefits ("SSI") on April 24, 2020, alleging a disability onset of January 1, 2018. Tr. 69. Plaintiff's claims were denied initially and on reconsideration. Tr. 105-110. On April 14, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 7-28. Following the hearing, on June 2, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 7-28. The Appeals Council denied Plaintiff's request for review. Tr. 1-6. Subsequently, Plaintiff filed an action for judicial review on September 8, 2023. This Court remanded the case to the Commissioner of Social Security for further administrative proceedings pursuant to the fourth sentence of section 205(g) of the Social Security Act. On November 30, 2023, the Appeals Council vacated the final decision of the Commissioner of Social Security and remanded this case to the ALJ. Tr. 899-903; Tr. 926-930. The ALJ held a second hearing on May

---

[1] Plaintiff filed this case against Carolyn Colvin, the Acting Commissioner of Social Security on December 4, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Caroline R. v. Frank Bisignano*
Civil No. 24-3506-DRM
March 27, 2026
Page 2

12, 2024 and denied Plaintiff's claims for disability once again. Tr. 840-866. Having again exhausted all administrative remedies, Plaintiff filed this second action for judicial review.

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since April 24, 2020, the application date." Tr. 846. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "epilepsy/seizures (with tremors) (epileptic and non-epileptic seizures), migraines, depression, impulse control disorder, and schizophrenia." Tr. 846. The ALJ found the following nonsevere impairments: "gastroesophageal reflux disease (GERD), obesity, spinal disorders (chronic back/hip pain), osteoarthritis, dysfunction of major joints (right knee), and fibromyalgia." Tr. 846-48. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 848. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following limitations:

> the claimant is frequently able to climb ramps or stairs. The claimant is never able to climb ladders, ropes or scaffolds. The claimant is frequently able to stoop, kneel, crouch or crawl. The claimant is occasionally able to balance. The claimant is limited to frequent use of the right lower extremity for pushing/pulling or operation of foot controls. The claimant needs to avoid work in an environment with more than a moderate noise level. The claimant needs to avoid work in an environment with lighting brighter than that found in a typical office setting. The claimant needs to avoid work at unprotected heights or around dangerous moving machinery (i.e. forklifts). The claimant needs to avoid work requiring commercial driving or operation of moving machinery. The claimant is able to understand and carry out simple instructions and routine, repetitive tasks. The claimant is able to use common sense understanding to carry out detailed, but uninvolved, instructions. The claimant needs to avoid work requiring a high-quota production rate pace (i.e., rapid assembly line work where coworkers are side-by-side and the work of one affects the work of the others). The claimant is able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to

*Caroline R. v. Frank Bisignano*
Civil No. 24-3506-DRM
March 27, 2026
Page 3

be off task. However, time off task can be accommodated with normal breaks. The claimant is occasionally able to change activities or work settings during the workday without it being disruptive. The claimant is occasionally able to deal with changes in a routine work setting. The claimant is able to have occasional interaction with supervisors, coworkers and/or the general public.

Tr. 851. The ALJ determined that Plaintiff did not have any past relevant work but could perform jobs that existed in significant numbers in the national economy, such as mail sorter and office helper. Tr. 859. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 859.

## III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.   ANALYSIS

On appeal, Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because the ALJ improperly evaluated the severity of her symptoms of fibromyalgia and mental impairments, including depression. ECF No. 11 at 8. Plaintiff contends that the ALJ was prohibited from relying on objective findings, such as normal x-rays, gait, strength testing, and mental status examinations, to discount her subjective complaints of pain, fatigue, and psychiatric symptoms, even as one factor among many. *Id.* at 10. Plaintiff asserts that the ALJ's repeated references to unremarkable imaging and examination findings warrant remand because fibromyalgia and similar, chronic mental impairments are inherently subjective and do not produce objective markers capable of measuring symptom severity. *Id.* at 16.

In response, the Commissioner contends that the ALJ properly applied the two-step symptom evaluation framework and did not rely solely on objective evidence in assessing Plaintiff's subjective complaints. ECF No. 12 at 7. The Commissioner argues that the ALJ considered the full record, including treatment history, medication response, daily activities, and opinion evidence, and concluded that Plaintiff's statements were not entirely consistent with the evidence. *Id.* at 12. Regarding fibromyalgia, the Commissioner asserts that the ALJ complied with Social Security Ruling ("SSR") 12-2p, acknowledged the diagnosis, and incorporated appropriate

*Caroline R. v. Frank Bisignano*
Civil No. 24-3506-DRM
March 27, 2026
Page 4

limitations to account for pain and fatigue. *Id.* at 9. In reply, Plaintiff maintains that the Commissioner failed to cure these deficiencies and reiterates that the ALJ's symptom evaluation violates controlling precedent. ECF No. 13.

An ALJ properly analyzes subjective complaints by using a two-part test. *See Craig*, 76 F.3d at 594–95. First, the ALJ must assess the objective medical evidence and determine whether the plaintiff has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2016 WL 1119029, at *4 (S.S.A. Mar. 16, 2016). Second, if the ALJ finds a medically determinable impairment, the ALJ assesses the plaintiff's symptoms to determine how the symptoms' intensity and persistence affect the plaintiff's ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). At the second step, "there need not be objective evidence of the pain [or symptoms] itself or its intensity." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)).

Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain" or symptoms, a claimant may "rely exclusively on subjective evidence" at the second step. *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Instead, the ALJ is required to balance the record evidence as "[a] report of . . . inconsistencies in the objective medical evidence is one of the many factors . . . consider[ed] in evaluating" this prong. *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (quoting SSR 16-3p, 2016 WL 1119029, at *5).

Where a Plaintiff suffers from fibromyalgia or chronic depression, an additional restriction applies. In *Arakas*, the Fourth Circuit stated:

> we join those circuits by holding that ALJs may not rely on objective medical evidence (or the lack thereof)—*even as just one of multiple factors*—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease.

*Arakas*, 983 F.3d at 97 (emphasis added.)

In *Shelley* C., the Fourth Circuit extended the holding of *Arakas* to "depression—particularly chronic depression," holding that it was "one of those other diseases" that does not produce objective medical evidence of the severity of its symptoms. *Shelley C.*, 61 F.4th at 360-61. This is because

*Caroline R. v. Frank Bisignano*
Civil No. 24-3506-DRM
March 27, 2026
Page 5

> the DSM-V declares that "no laboratory test has yielded results of sufficient sensitivity and specificity to be used as a diagnostic tool for [Major Depressive Disorder.]" But most importantly, "[s]ymptoms caused by major depression can vary from person to person." Stated differently, symptoms of MDD, like those of fibromyalgia, are "entirely subjective," determined on a case-by-case basis.

*Id.* at 361 (citations omitted.)

However, *Arakas and Shelley C.* do not foreclose an ALJ's ability to "weigh[] [a] [p]laintiff's subjective complaints against other evidence in the record," such as by "compar[ing] [a] [p]laintiff's hearing testimony to her previous statements, including those made during medical visits with her primary care provider and her statements regarding her activities of daily living . . . . Such weighing remains permissible under *Shelley C.* and *Arakas.*" *Lasharne W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023). *See Kimberly S. v. Comm'r, Soc. Sec.,* No. EA-23-1404, 2024 WL 5007372, at *7 (D. Md. Dec. 3, 2024) (ALJ's finding that plaintiff's "own subjective reports of improvement [of depression symptoms] with treatment and independent daily activities were inconsistent with the disabling limitations she alleged" was not impermissible reliance on absence of objective medical evidence.)

In *Lonnell J. v. Bisignano*, No. DRM-24-3673, 2026 WL 693344 (D. Md. Mar. 12, 2026), this Court drew a distinction between impermissible reliance on objective medical evidence and an ALJ's appropriate consideration of a claimant's prior subjective statements as recorded in medical records. The Court emphasized that a provider's documentation of a claimant's reported symptoms reflects the claimant's subjective reporting, not independent objective validation. Such documentation therefore does not qualify as "objective medical evidence," and relying on it to discount later assertions regarding the severity of fibromyalgia or chronic depression symptoms does not, standing alone, violate the rule of *Arakas* and *Shelley C.* Specifically, this Court stated:

> In finding that the record evidence did not support the intensity, persistence, and limiting effects of these symptoms, it was not improper for the ALJ to consider that Plaintiff had on particular dates "denied depression" to a provider, "mention[ed] that he wanted to find a stable job," "reported a benefit with meditation, medication, and therapy," "continued to report having a good response on his medications, with a reported improvement in his mood," "denied suicidal and homicidal ideation," "reported a good response in his mood and . . . reported eating and sleeping better on his medications," "stated that his new medication was working well," and the like. These are reasonable "compar[isons] [of] Plaintiff's hearing testimony to [his] previous statements, including those made during medical visits with [his] . . . provider," *Lasharne W.* 2023 WL 2414497, at *4; and weighing of whether "Plaintiff's own subjective reports of improvement with treatment . . . were inconsistent with the disabling limitations [he] alleged." *Kimberly S.*, 2024 WL 5007372, at *7.

*Lonnell J.*, 2026 WL 693344, at *4 (record citation omitted).

*Caroline R. v. Frank Bisignano*
Civil No. 24-3506-DRM
March 27, 2026
Page 6

Here, at the first step, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" Tr. 852. At the second step the ALJ concluded that Plaintiff's:

> statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> The claimant's allegations are not supported by the objective medical evidence. The medical records confirm the claimant's severe impairments of epilepsy/seizures (with tremors) (epileptic and non-epileptic seizures), migraines, depression, impulse control disorder, and schizophrenia; however, the records do not support the severity she alleges.

Tr. 852.

Plaintiff contends this second step was undertaken in error. With regard to mental impairments, Plaintiff argues that:

> Here, as in *Shelley C.*, the Plaintiff has been diagnosed with severe mental impairments, including depressive disorder, and persistent depression. The Administrative Law Judge specifically discounted the Plaintiff's subjective complaints on the basis that they were inconsistent with the objective medical evidence, including conservative treatment history, positive response to treatment, and generally normal observations throughout his mental status examinations, despite the presence of an impairment, depression, whose symptoms are entirely subjective. In doing so, the Administrative Law Judge improperly increased the Plaintiff's burden of proof.

ECF No. 11 at 17.

As an initial matter, the Court finds that Plaintiff's medically determinable impairment "depression," Tr. 846, falls within *Shelley C.*'s extension of the *Arakas* holding.[3] Therefore, the ALJ could not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount [Plaintiff's] subjective complaints regarding symptoms" of these disorders. *Arakas*, 983 F.3d at 97.

---

[3] The plaintiff in *Shelley C.* had Major Depressive Disorder, 61 F.4th at 346, but the court expressed its holding as applying more broadly to "depression—particularly chronic depression." *Id.* at 361. The chronic nature of Plaintiff's depression in the instant case is evident by the span of dates on which it manifests in the record, as discussed in the ALJ decision: July 15, 2020, Tr. 852; September 2020, Tr. 855; December 24, 2020, Tr. 853; April 22, 2021, Tr. 853; June 2023, Tr. 855; May 14, 2024, Tr. 852.

*Caroline R. v. Frank Bisignano*
Civil No. 24-3506-DRM
March 27, 2026
Page 7

It appears that the ALJ at times engaged in the analysis noted in *Lonnell J.*, *Lasharne W.*, and *Kimberly S.* as remaining permissible under *Arakas* and *Shelley C.* Specifically, the ALJ stated:

> In September 2020, the claimant reported that she was evaluated in the emergency department for depression and suicidal ideation, and she was prescribed Latuda medication. (Ex. B9F/23). She stated that she was doing well, and she had a new therapist. (Ex. B9F/23). On December 4, 2020, the claimant presented for a re-evaluation at Thrive Behavioral Health and described feelings of sadness and depression, as well as "urges to cut." (Ex. B5F/14) . . . Progress notes from Thrive Behavioral Health dated August 2021 showed that the claimant continued to experience "ups and downs," but her mood swings were not as intense as they were in the past.

Tr. 855.

In finding that the record evidence did not support the intensity, persistence, and limiting effects of these symptoms, it was not improper for the ALJ to consider that Plaintiff had on particular dates reported that she was doing well with less intense mood swings. These are reasonable "compar[isons] [of] Plaintiff's hearing testimony to her previous statements, including those made during medical visits with her . . . provider," *Lasharne W.* 2023 WL 2414497, at *4; and weighing of whether "Plaintiff's own subjective reports of improvement with treatment . . . were inconsistent with the disabling limitations she alleged." *Kimberly S.*, 2024 WL 5007372, at *7.

But the ALJ also references items which are not mere reports of Plaintiff's past subjective statements. Rather, they contain providers' clinical interpretations of their observations:

> During treatment, the claimant's mental status examination improved, showing *good eye contact, an alert demeanor, and an organized thought process*. (Ex. B14F/232). There was no indication of any safety issues, and the claimant was able to complete her activities of daily living independently. (Ex. B14F/291, 323). She also continued outpatient mental health treatment with Sheppard Pratt. (Ex. B19F). In November 2023, the claimant reported that she was "doing good." (Ex. B19F/59). *Her mental status examination showed a stable affect, appropriate thought content, and no perceptual disturbances.* (Ex. B19F/60). By February 2024, the claimant reported that everything was going well, and her mood was stable. (Ex. B19F/136).

Tr. 855-856 (emphasis added).

> The claimant's August 2019 mental status examination documented *normal eye contact, full orientation to person, place, and time, and there was no evidence of abnormal or psychotic thoughts despite reported visual hallucinations.* Her December 2020 mental status examination showed *normal thought content, good judgment, and a normal attention span. (Ex. B5F/13).*

*Caroline R. v. Frank Bisignano*
Civil No. 24-3506-DRM
March 27, 2026
Page 8

Tr. 858 (emphasis added).

The presumed relevance of these normal findings is that they imply the absence of "[p]sychiatric signs" of depression, and therefore a lack of "objective medical evidence" supporting Plaintiff's testimony about her symptoms of these disorders.[4] In context, the ALJ's discussion of these findings suggests he engaged in the analysis forbidden by *Arakas* and *Shelley C.*: "rely[ing] on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of" chronic depression. *Arakas,* 983 F.3d at 97. *See Shelley C.*, 61 F.4th at 361.

Because the ALJ improperly increased Plaintiff's burden of proof by effectively requiring that subjective statements be validated by objective medical evidence, the Court must find error. *See Arakas,* 983 F.3d at 96 (citing *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). The ALJ's decision to partially discredit Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms is accordingly unsupported by substantial evidence. Thus, the Court is unable to find that the ALJ's determination is supported by substantial evidence. Therefore, remand is required.

On remand, the ALJ may consider conducting the 20 C.F.R. § 416.929(c) analysis of Plaintiff's depression-related symptoms separately from those of other disorders, to avoid any ambiguity that the discussion of objective medical evidence is confined to those disorders not subject to the restriction of *Arakas* and *Shelley C.*

Because the case is being remanded on the foregoing grounds, I need not address Plaintiff's other argument, related to fibromyalgia. On remand, the ALJ is welcome to consider this argument and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

---

[4] Social Security regulations define *objective medical evidence* as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1502(f), 416.902(k). *Signs* is further defined to mean:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. §§ 404.1502(g), 416.902(l).

*Caroline R. v. Frank Bisignano*
Civil No. 24-3506-DRM
March 27, 2026
Page 9

## V.    **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge